UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROOT CONSULTING, INC., and SCOTT TAYLOR, | |
| Plaintiffs, | Case No. 14-cv-4381 |
| v. | Judge John Robert Blakey |
| WILLIAM INSULL, | |
| Defendant. | |
| WILLIAM INSULL, ROOT CONSULTING, INC., BURR RIDGE FRONTAGE ROAD, LLC, and TELCO SELECT, INC., | |
| Counter-Plaintiffs, | |
| v. | |
| SCOTT TAYLOR, ROOT CONSULTING, INC., and BURR RIDGE FRONTAGE ROAD, LLC, | |
| Counter-Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case arises from a business relationship gone sour. Plaintiff Scott Taylor, individually and on behalf of Root Consulting, Inc. (Root), sued Defendant William Insull for breach of fiduciary duty (Count I); an accounting of Root's records (Count II); business defamation (Count III); and tortious interference with a business relationship (Count IV). [1]. This Court previously granted summary judgment on Count I to Taylor and Root. [84].

Insull asserted nine counterclaims, [130], and now seeks summary judgment on three: removal of Taylor as an officer of Root (Count I); breach of fiduciary duty for Taylor's alleged use of Root assets for personal gain (Count IV); and breach of fiduciary duty for Taylor's alleged use of Root assets to pay improper legal fees (Count V), [199]. Insull also asks this Court to strike some of Taylor's responses to his statement of facts. [211]. For the reasons explained below, this Court denies Insull's motion for partial summary judgment and partially grants and partially denies his motion to strike.

## I. Background

### A. Local Rule 56.1 and Evidentiary Rules

Insull challenges a number of Taylor's responses to Insull's statement of facts, the admissibility and relevance of Taylor's statement of additional facts, and the propriety of Taylor's response brief. *See* [209] at 3–4; [211]. This Court addresses these arguments before turning to the facts of the case.

#### 1. Rule 56.1 Statements of Fact

First, Insull seeks to strike Taylor's responses to paragraphs 12–16, 21–25, 27–30, 34, 35, and 39 of Insull's statement of material facts. [211] at 2. Insull contends that these responses violate Local Rule 56.1 because they contain additional facts, are immaterial, and lack support in the record. *Id*. at 4, 8, 12.

This Court has "broad discretion" to enforce the local rules governing summary judgment motions. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Those rules demand that the non-moving party's

responses to the moving party's statements of fact contain "specific references" to record evidence to justify any denial. Local R. 56.1(b)(3); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Thus, purely argumentative denials, legal conclusions, and unsupported general denials do not belong in Local Rule 56.1 statements. *See Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012); *Malec*, 191 F.R.D. at 584. District courts may disregard any improper denials and deem the opponent's factual allegations admitted. *See Aberman v. Bd. of Educ. of City of Chi.*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017).

That said, the local rules serve to assist courts "in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Accordingly, and in the interests of justice and efficiency, courts may exercise their discretion "in the direction of leniency" and consider statements and responses that "arguably" satisfy the rules. *Aberman*, 242 F. Supp. 3d at 677 (citing *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013)); *see also Cardoso v. Cellco P'ship*, No. 13-c-2696, 2014 WL 6705282, at *3 (N.D. Ill. Nov. 26, 2014) (declining to strike statements of fact despite "egregious" noncompliance with Rule 56.1 so as to resolve summary judgment motion "expeditiously and on the merits"). Nor must a court faced with inadequate responses "turn a blind eye" to facts available elsewhere in the record. *Farmer v. DirectSat USA, LLC*, No. 08-c-3962, 2010 WL 3927640, at *2 (N.D. Ill. Oct. 3, 2010) (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)).

Applying those principles, this Court strikes: Taylor's responses to paragraphs 12 and 13, except for the first sentence of each; the first sentence of Taylor's response to paragraph 14; and the portion of Taylor's response to paragraph 15 that speculates about Insull's motives. *See* [207] ¶¶ 12–15; *see also Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements should not include "conjecture"). The rest of Taylor's responses have evidentiary support and permissibly respond to the substance of Insull's proffered statements of fact. *See Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000) (responses to statements of fact should "fairly meet the substance of the material facts asserted"); *cf. Cardoso*, 2014 WL 6705282, at *2 (responses should not contain "additional *unrelated*" or "nonresponsive facts") (emphasis added).

If Taylor's responses are broader in scope than the statements of fact they address, this stems from Insull's attempt to misuse his statements of fact to characterize the evidence, or, in some cases, to blatantly speculate. *See, e.g.*, [207] ¶¶ 16, 25; *see also Cady*, 467 F.3d at 1060; *Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 633–37 (N.D. Ill. 2012) (permitting the non-movant broader responses where the movant impermissibly characterized the evidence or skewed statements of fact in his favor). In such circumstances, Taylor may use his responses to call Insull's credibility into question or to offer "the *full* version of the story." *Hartford Fire*, 903 F. Supp. 2d at 636.

Insull also raises various challenges to Taylor's statement of additional facts. *See generally* [210]. Although Taylor's incorporation of his responses to Insull's

4

factual statements by reference, [208] at 1 n.1, does not comply with Local Rule 56.1, it does not hinder this Court's consideration of the merits. This Court therefore declines to impose any penalty for that shortcut in this case. *See Kiswani v. Phoenix Sec. Agency, Inc.*, 529 F. Supp. 2d 949, 952 (N.D. Ill. 2008) (declining to strike plaintiff's statement of facts where supporting materials were not properly attached because the court could "still easily find" the material to which the plaintiff referred); *cf. Schlessinger v. Chi. Hous. Auth.*, 130 F. Supp. 3d 1226, 1228 (N.D. Ill. 2015) (striking responses where plaintiff cross-referenced his statement of additional fact without explanation and thus made it harder for the court to identify genuine factual disputes).

With respect to the content of Taylor's statement of additional facts, this Court rejects Insull's claims that those facts are "immaterial." *See, e.g.*, [210] ¶ 3. Each of Taylor's proffered facts bears on the nature of his business activities and their relationship to Root; they thus shed light on whether Taylor fulfilled his fiduciary obligations to Root—the focus of Insull's motion—and are therefore material. *See Malec*, 191 F.R.D. at 583. This Court also rejects Insull's argument that Taylor's deposition testimony does not provide valid support for Taylor's statements of additional fact. *See, e.g.*, [210] ¶ 4. That testimony constitutes admissible evidence at summary judgment, as discussed in further detail below.

### 2. Taylor's Brief

Insull contends that Taylor waives all arguments because his response brief fails to cite any legal authority. [209] at 3. True, Taylor' s brief cites only to the record and fails to reference any case law. *See generally* [205]. Nevertheless, his

arguments are not "perfunctory and undeveloped," as waiver generally requires. *Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008). Instead, Taylor's brief focuses wholly upon demonstrating factual deficiencies in Insull's arguments to show that Insull does not merit summary judgment, which suffices given the context here. *See, e.g.*, [205] at 1.

Because the parties primarily dispute the facts rather than the law, this Court finds no reason to strike Taylor's otherwise unorthodox brief. Taylor addresses each of Insull's allegations in detail. *See generally* [205]; *cf. United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (plaintiffs failed to cite "any applicable legal authority *or provide support*" for their arguments) (emphasis added). His brief adequately assists the Court in determining what issues remain for trial. *See Delapaz*, 634 F.3d at 899. Thus, in an exercise of discretion, this Court again excuses the impropriety in the interest of addressing the parties' claims on the merits. *See Myers v. City of Chicago*, No. 09-c-05958, 2012 WL 4009694, at *3 (N.D. Ill. Sept. 12, 2012) (engaging with plaintiff's arguments, despite his failure to cite any legal authority, in order to address his claims on the merits).

Moreover, regardless of any deficiencies in Taylor's brief, it remains Insull's burden to establish that no genuine dispute exists as to any fact material to his motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, Insull's various arguments that Taylor fails to prove certain facts, *see, e.g.*, [209] at 5, 12, improperly shift the burden on this motion and require no further response.

### 3. Deposition Testimony

Finally, Insull repeatedly challenges Taylor's use of his deposition testimony as "incompetent" evidence. *See, e.g.*, [209] at 4. But a party may "defeat summary judgment with his or her own deposition." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006). To constitute evidence, however, such testimony must be based upon "personal knowledge or firsthand experience" rather than "conclusory allegations." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Taylor's deposition meets that standard: his testimony almost entirely addresses his own business dealings, of which he clearly has personal knowledge. *See generally* [201-2]; [201-5]. Nor does Insull identify a specific portion of Taylor's testimony that purportedly lacks an ostensible foundation of personal knowledge. *See* [209] at 4. Thus, Taylor's testimony constitutes competent evidence that may preclude summary judgment if it creates genuine issues of material fact. *See Paz*, 464 F.3d at 664.

### B. This Case

This Court incorporates by reference, and presumes familiarity with, its prior opinion granting Taylor's motion for partial summary judgment [85], and only provides additional facts where relevant to the present motion.

In 2010, while both Insull and Taylor still served as officers of Root, Taylor formed SRKARS, LLC, an Illinois limited liability company. [201] ¶ 17. The parties agree that Taylor created SRKARS to help manage his family's "cottage industries"—a variety of small business activities, including catering and cosmetic

services run by Taylor's wife, Robin.[1] *Id.*; *see also* [201-2] at 3, 30. Taylor is the sole member and manager of SRKARS. [201] ¶¶ 18–19.

SRKARs also engaged in activities and transactions that related to or interacted with aspects of Root's business; these transactions form the basis of Insull's counterclaims. *See generally* [130]; [200]; [201]. Broadly, Insull claims that Taylor used SRKARS to misappropriate Root assets and opportunities for his personal gain. *See, e.g.*, [200] at 7. Taylor contends that he leveraged SRKARS' assets and credit to prop up Root when it suffered financial setbacks from about 2014 to 2016. *See, e.g.*, [205] at 4. Each party's position depends in significant part upon their interpretation of the events in that period; as such, the record contains few clear facts, and fewer undisputed facts, as shown by the following discussion.

The parties agree that Root experienced financial difficulties beginning around 2013. *See* [201] ¶¶ 14–16; [207] ¶¶ 14–15. This Court previously found that Root suffered financial harm as a result of Insull's breach of the fiduciary duty he owed Root. [85] at 16. Insull now argues that Root could not pay its operating expenses from 2013 to 2016, but that Taylor refused to have Root declare bankruptcy so he could avoid personal financial losses. [201] ¶¶ 14–16. Insull's characterization of Taylor's motives consists of mere speculation unsupported by the record, so this Court disregards it. *See Cady*, 467 F.3d at 1060. The exact state of Root's financial affairs remains disputed. Taylor testified that during the relevant period Root had new projects lined up, that both he and Tom Breslin—a Root

---

[1] For clarity and brevity, this Court refers to Scott Taylor as "Taylor," and to his wife by her first name.

investor—felt that declaring bankruptcy was unnecessary, and that Root's primary financial problem was a lack of credit and liquidity, rather than total insolvency. [201-2] at 3, 25, 34, 36; [201-5] at 6, 39, 86.

The parties also agree that from 2010 to about 2015, SRKARS, Taylor, and Robin received commissions from third-party "circuit providers" who sold circuits to Root customers. *See* [201] ¶¶ 23–24. From 2011 to 2013, Root also received commission income from third-party circuit providers. *Id.* ¶ 31. Taylor testified in his deposition that first, Root's officers—including Insull—had a "common practice" of referring commissions to themselves or any other entity; second, that the commissions SRKARS received after about 2014 went to paying for work provided to Root customers to keep Root afloat; and finally, that the commission referrals generated business leads for Root. [207] ¶¶ 25, 27; [201-2] at 21–22.

From 2010 to 2014, SRKARS did not perform any information technology work (in other words, it did not compete with Root). *See id.* ¶ 20; [208] ¶ 2. From 2014 to 2016, however, SRKARS did provide information technology services, including to Root customers. [201] ¶¶ 20, 21. SRKARS received payment from Root customers for that work. *Id.* ¶ 39. Taylor testified that during this period, Root could not obtain credit from its suppliers, and Taylor therefore leveraged SRKARS' "credit and capital" to secure equipment, supplies, and labor to service Root customers. *See* [207] ¶ 21. For example, SRKARS paid the wages of IT technician Chad Cecil, who performed work for Root customers, as part of what Taylor characterized as his efforts to keep Root in business. *See id.* Taylor himself

9

contributed $3,500 to SRKARS' capital in or around 2014–2015 to support these payments. [208] ¶ 3. Taylor documented the financial transactions between Root and SRKARS during the relevant period. [207] ¶ 28; *see generally* [201-9]; [201-10]. Because SRKARS paid out costs for these services, it also received the corresponding payments to balance SRKARS' books and to "track the appropriate tax burdens of each company." [208] ¶ 4.

At some point, SRKARS received a payment from an energy company. *See* [201] ¶ 34; [207] ¶ 34. SRKARS received this fee after Taylor arranged for Root to use that energy company as its electric utility, which Taylor testified resulted in 40% savings for Root's electric bill. [207] ¶ 34. Taylor testified that he made the change for Root's benefit, and arranged for SRKARS to receive the "referral fee" since Root could not be paid for "referring" itself as a customer. *Id*.

Finally, Insull claims that Taylor had Root provide resources to SRKARS in the form of costs and services. *See* [201] ¶¶ 35, 36. Specifically, Insull claims that Taylor made Carolyn Hackett, a Root employee, work "on behalf of SRKARS" even though Root paid her wages. *Id*. ¶ 35. Insull also alleges that Root paid some of SRKARS' legal costs. *Id*. ¶ 36. Taylor testified that Hackett worked as Root's office manager, and that while she held that position he occasionally asked her to email SRKARS documents for him. [207] ¶ 35. He also claims that, as an accepted practice, Root employees could use Root's email and phone services for non-Root related business as a "perk" of their employment. *Id*. Taylor admits that on one occasion Root paid $70 in legal fees that SRKARS should have paid, but he also

10

submitted an affidavit attesting that he reimbursed Root for that payment in November 2017. *Id*. ¶ 36; [205-6] at 2. Insull contends that Root improperly paid fees amounting to $115, rather than $70. [210] ¶ 7; [201-17] at 1, 3.

Insull amended his counterclaims in September 2016. [130]. This Court now addresses his motion for summary judgment on Counts I, IV, and V of those counterclaims. [199].

II.     **Legal Standard**

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that no genuine dispute exists as to any material fact. *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, this Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To satisfy that burden, the non-moving party must do more than create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "there

must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Analysis

Count I of Insull's counterclaim seeks the removal of Taylor as an officer of Root, and Counts IV and V allege that Taylor breached his fiduciary duty to Root by misusing Root's assets. *See* [130] at 17, 20–21. Because Insull seeks Taylor's removal based upon the conduct underlying his breach of fiduciary duty claims, *see id*. at 17; [200] at 16, this Court addresses the fiduciary duty claims first.

### A. Breach of Fiduciary Duty

To show a breach of fiduciary duty, Insull must establish that a fiduciary duty existed, that Taylor breached the duty, and that the breach proximately caused damages to Insull or Root. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). The parties dispute only the second and third elements, *see generally* [205] (contesting that Taylor's actions did not serve Root or caused it harm), and this Court confines its analysis accordingly.

Insull claims that Taylor breached his fiduciary duty to Root by using Root assets for personal gain (Count IV) and by improperly using Root funds to pay legal costs (Count V). [130] at 20, 21.

#### 1. Count IV: Personal Gain

In Count IV, Insull alleges that Taylor breached his fiduciary duty by diverting Root's corporate opportunities to himself, his family, and/or SRKARS; making Root customers pay SRKARS instead of Root; using Root's assets to create

12

business for SRKARS; diverting commissions from Root to SRKARS, Taylor, and/or Robin; using Root assets to pay for SRKARS services and expenses; and "by accepting a salary while Root was insolvent and while performing services for SRKARS." [200] at 7, 11.

As this Court explained in its previous opinion, officers owe their corporation a duty to act with "utmost good faith and loyalty," and cannot promote their interests at the expense of corporate interests. *See* [85] at 9. That includes an obligation to disavow business opportunities creating a conflict of interest, and to refrain from usurping business opportunities developed through the use of corporate assets. *Id*. A corporate opportunity means any "proposed activity" that is "reasonably incident to the corporation's present or prospective business and in which the corporation has the capacity to engage." *Dremco, Inc. v. South Chapel Hill Gardens, Inc.*, 654 N.E.2d 501, 505 (Ill. App. Ct. 1995). A corporate officer does not breach the fiduciary duty when he or she acts "in the best interest of the corporation." *Davis v. Dyson*, 900 N.E.2d 698, 713 (Ill. App. Ct. 2008).

Genuine issues of material fact surrounding Taylor's conduct preclude summary judgment with respect to Insull's breach of fiduciary duty claims. This Court need not address each of Insull's allegations individually. Suffice it to say that Taylor presents admissible evidence—including his own testimony—that supports his claim that every transaction he or SRKARS took that related to Root business was aimed at sustaining Root through a period of financial crisis. *See, e.g.*, [207] ¶ 21; [201-2] at 3–4; [205] at 4–6. If true, Taylor cannot be liable for breaching

13

his fiduciary duty to Root. *See Davis*, 900 N.E.2d at 713; *see also Avila, Inc.*, 801 F.3d at 782. Absent additional factual context for the raw financial data in the record, *see, e.g.*, [201-9], both Taylor and Insull's own interpretations of the facts remain plausible. Without a more detailed picture of Root and SRKARS' financial relationship, their respective profit trajectories, and the scope of their business activities, this Court cannot determine as a matter of law that Taylor breached his duties to Root or caused it harm. Resolving Insull's claim based upon the present record would require making credibility determinations, weighing evidence, and deciding "which inferences to draw from the facts"—a task for the factfinder, and not the district court at summary judgment. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). This Court denies Insull summary judgment on Count IV. *See id.*; *see also Anderson*, 477 U.S. at 254–55.

### 2. Count V: Legal Fees

Insull does not clearly identify the conduct underlying Count V in his brief. *See id.* 7–16. His counterclaim appears to argue that Taylor improperly used Root assets to pay the legal costs associated with this case, [130] at 21, while his brief references only the sum that Root paid for SRKARS' legal fees, *see* [200] at 7, 13, 15.

To the extent that Count V arises from the alleged use of Root assets to pay the costs of this case, Insull offers no arguments, evidence, or legal authority relating to that contention, and therefore waives the argument. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). To the extent that Count V arises from the sum that Root improperly paid for legal services rendered to SRKARS, a genuine dispute of fact remains as to whether Taylor fully reimbursed Root for that

14

expense. *See* [208] ¶ 7; [210] ¶ 7. That factual dispute bears directly on the harm element of Insull's breach of fiduciary duty claim and thus precludes summary judgment on Count V. *See Celotex*, 477 U.S. at 323.

B.  **Removal of Taylor as an Officer of Root**

Root asks this Court to remove Taylor as an officer of Root under 805 ILCS 5/12.56 based upon the allegations discussed above. *See* [130] at 17–18; [200] at 16. Section 5/12.56 permits shareholders to petition courts for a corporate officer's removal if they can establish, among other things, that the officer has acted, is acting, "or will act in a manner that is illegal, oppressive, or fraudulent" with respect to the shareholder, or that corporate assets "are being misapplied or wasted." §§ 5/12.56(a)(3), (4).

Here, Insull falls far short of demonstrating as a matter of law that Taylor committed any illegal or fraudulent acts with respect to Insull or Root. As discussed above, the nature of SRKARS' transactions and activities and their relationship to Root remains open to vastly differing interpretations. Thus, genuine issues of material fact exist as to the propriety of Taylor's actions, and as to whether he "misapplied" Root assets or, in fact, leveraged SRKARS' assets to stabilize Root.

Finally, although "overbearing and heavy-handed" conduct toward shareholders may constitute "oppression" under Section 12.50, that determination depends upon the specific facts of each case. *See Allen v. Park Nat'l Bank & Tr. of Chi.*, No. 96-c-2198, 1998 WL 299477, at *5 (N.D. Ill. May 29, 1998) (collecting Illinois cases). Here, given this Court's previous finding that Insull breached his fiduciary duty to Root, this Court cannot conclude that Taylor's possibly "heavy-

15

handed" control of Root constituted impermissibly "oppressive" conduct warranting his removal as an officer. Taylor's version of events portrays his drastic tactics as aimed at—and succeeding in—pulling Root back from the brink of financial collapse. *See, e.g.*, [207] ¶¶ 14, 22. But at summary judgment, this Court may not make credibility determinations or select which inferences to draw. *See Payne*, 337 F.3d at 770. Accordingly, this Court denies summary judgment on Count I. *See Anderson*, 477 U.S. at 254–55.

## IV. Conclusion

For the reasons explained above, this Court denies Insull's motion for partial summary judgment [199] and partially grants and partially denies Insull's motion to strike Taylor's responses [211]. The motion hearing set for 4/10/2018 at 9:45 a.m. in Courtroom 1203 is converted to a status hearing.

Dated: April 6, 2018

Entered:

_____
John Robert Blakey
United States District Judge

16